**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ERIC NOALAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>XTI AEROSPACE, INC., SCOTT POMEROY, and BROOKE TURK,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Eric Noalan ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by XTI Aerospace, Inc. ("XTI Aerospace" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by XTI Aerospace; and (c) review of other publicly available information concerning XTI Aerospace.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired XTI Aerospace securities between April 15, 2026 and August 17, 2026, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. XTI Aerospace is an aerospace and advanced technology company.

3. On August 17, 2026, after the market closed, XTI Aerospace revealed that it could not timely file its Form 10-Q because, among other things, it is "in the process of completing an internal review of the Registrant's former Chief Executive Officer, who resigned on August 17, 2026, and other related corporate governance matters."

4. On this news, XTI Aerospace's stock fell $0.25 per share, or 15.9%, to close at $1.32 on August 18, 2026, on unusually heavy trading volume.

5. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that senior

executives had engaged in certain undisclosed activities; (2) that these activities required Board review; (3) that there was reason to doubt the effectiveness of the Company's disclosure controls and procedures; (4) that, as a result, the Company would be unable to timely file its earnings reports; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

10. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

11. Plaintiff Eric Noalan, as set forth in the accompanying certification, incorporated by reference herein, purchased XTI Aerospace securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12. Defendant XTI Aerospace is incorporated under the laws of Nevada with its principal executive offices located in Addison, Texas. XTI Aerospace's common stock trades on the NASDAQ exchange under the symbol "XTIA."

13. Defendant Scott Pomeroy ("Pomeroy") was the Company's Chief Executive Officer ("CEO") from March 2024 to August 17, 2026.

14. Defendant Brooke Turk ("Turk") was the Company's Chief Financial Officer ("CFO") at all relevant times.

15. Defendants Pomeroy and Turk (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16. XTI Aerospace is an aerospace and advanced technology company. The Company was known as Inpixon until its merger with XTI Aircraft Company in March 2024.

17. In November 2025, the Company acquired Drone Nerds, LLC and Anzu Robotics, LLC (together, "Drone Nerds").

### Materially False and Misleading Statements Issued During the Class Period

18. The Class Period begins on April 15, 2026. On that day, XTI Aerospace issued a press release announcing fourth quarter and full year 2025 results. The press release touted the Company's financial results, alleging the following in relevant part:[1]

> 2025 fourth quarter and full year highlights (includes the acquisition of Drone Nerds, LLC and Anzu Robotics, LLC (together, "Drone Nerds") in November 2025, Inpixon results excluded and reflected in discontinued operations):
>
> - ***Revenue of $22.5 million***
> - ***Gross profit of $4.9 million***
> - Gross profit as a percentage of revenue of 21.9 percent
>
> * * *
>
> 2025 full year pro forma, XTI reported the following highlights (includes Drone Nerds as if the acquisition had occurred as of January 1, 2024):
>
> - ***Revenue of $121.6 million***
> - ***Gross profit of $26.8 million***
> - Gross profit as a percentage of revenue of 22.0 percent

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added, and all footnotes are omitted.

- Net loss from continuing operations of $39.0 million

19. On April 15, 2026, the Company submitted its annual report for the fiscal year ended December 31, 2025 on a Form 10-K filed with the SEC (the "FY25 10-K"). The FY25 10-K affirmed the previously reported financial results. The FY25 10-K further stated the following regarding the CEO's oversight and affirmed the effectiveness of the Company's disclosure controls and procedures, in relevant part:

> ***The Company's Chief Executive Officer ("CEO"), acting as the Chief Operating Decision Maker, or ("CODM"), regularly reviews and manages certain areas of its businesses,*** resulting in the Company identifying two reportable segments: Unmanned Aircraft Systems ("UAS") and Commercial Aviation. The Company manages and reports its operating results through these two reportable segments. This allows the Company to enhance its customer focus and better align its business models, resources, and cost structure to the specific current and future growth drivers of each business, while providing increased transparency to the Company's shareholders.
>
> * * *
>
> **Evaluation of Disclosure Controls and Procedures**
>
> We carried out an evaluation, under the supervision and with the participation of our management, including our chief executive officer (our principal executive officer) and our chief financial officer (our principal financial and accounting officer), of the effectiveness of the design and operation of our disclosure controls and procedures as of the end of the period covered by this report. The evaluation was undertaken in consultation with our accounting personnel. ***Based on that evaluation, our chief executive officer and our chief financial officer concluded that as of December 31, 2025, our disclosure controls and procedures were effective to ensure that information required to be disclosed by us in the reports that we file or submit under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms.***
>
> **Report on Internal Control over Financial Reporting**
>
> Our management is responsible for establishing and maintaining adequate internal control over financial reporting, as such term is defined in Rules 13a-15(f) and 15d-15(f) of the Exchange Act. Our internal control system is designed to provide reasonable assurance regarding the preparation and fair presentation of financial statements for external purposes in accordance with generally accepted accounting principles. All internal control systems, no matter how well designed, have inherent

> limitations and can provide only reasonable assurance that the objectives of the internal control system are met. We have performed an evaluation of the effectiveness of our internal control over financial reporting, based on criteria established by the Committee of Sponsoring Organizations of the Treadway Commission (COSO) in its 2013 Internal Control-Integrated Framework***. Based on that evaluation, our management, including our chief executive officer and chief financial officer, concluded that our internal control over financial reporting was effective as of December 31, 2025.***

20. On May 14, 2026, the Company issued a press release announcing first quarter 2026 results. The press release touted the Company's financial results, alleging the following in relevant part:

> 2026 first quarter highlights (Inpixon results excluded and reflected in discontinued operations):
>
> - ***Revenue of $27.7 million***
> - ***Gross profit of $5.1 million***
> - Gross profit as a percentage of revenue of 18.6 percent
>
> * * *
>
> "We believe the first quarter demonstrated continued progress in repositioning XTI Aerospace around a more scalable and financially disciplined operating model," said Scott Pomeroy, Chairman and Chief Executive Officer of XTI Aerospace.

21. On May 14, 2026, the Company submitted its quarterly report for the period ended March 31, 2026 on a Form 10-Q filed with the SEC, affirming the previously reported financial results. The quarterly report stated the following regarding the CEO's oversight and affirmed the effectiveness of the Company's disclosure controls and procedures, in relevant part:

> ***The Company's Chief Executive Officer ("CEO"), acting as the Chief Operating Decision Maker, or ("CODM"), regularly reviews and manages certain areas of its businesses,*** resulting in the Company identifying two reportable segments for the three months ended March 31, 2026: Unmanned Aircraft Systems ("UAS") and Advanced Defense Systems ("ADS"). The Company manages and reports its operating results through these two reportable segments. This allows the Company to enhance its customer focus and better align its business models, resources, and cost structure to the specific current and future growth drivers of each business, while providing increased transparency to the Company's shareholders.

* * *

**Disclosure Controls and Procedures**

> Disclosure controls are procedures that are designed with the objective of ensuring that information required to be disclosed in our reports filed under the Exchange Act, such as this Form 10-Q, is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms. Disclosure controls are also designed with the objective of ensuring that such information is accumulated and communicated to our management, including the Principal Executive Officer and Principal Financial Officer, as appropriate, to allow timely decisions regarding required disclosure. Internal controls are procedures which are designed with the objective of providing reasonable assurance that (1) our transactions are properly authorized, recorded and reported; and (2) our assets are safeguarded against unauthorized or improper use, to permit the preparation of our condensed consolidated financial statements in conformity with GAAP.
>
> ***We conducted an evaluation, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, of our disclosure controls and procedures (as defined in Rule 13a-15(e) and Rule 15d-15(e) of the Exchange Act). Based upon this evaluation, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of March 31, 2026.***

**Changes in Internal Controls**

> There have been no changes in our internal control over financial reporting identified in connection with the evaluation required by paragraph (d) of Rule 13a-15 or 15d-15 under the Exchange Act that occurred during the quarter ended March 31, 2026 that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

22. The above statements identified in ¶¶18-21 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that senior executives had engaged in certain undisclosed activities; (2) that these activities required Board review; (3) that there was reason to doubt the effectiveness of the Company's disclosure controls and procedures; (4) that, as a result, the Company would be unable to timely file its earnings reports; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

23. On August 17, 2026, after the market closed, XTI Aerospace revealed that it could not timely file its Form 10-Q because it is "***in the process of completing an internal review of the Registrant's former Chief Executive Officer, who resigned on August 17, 2026, and other related corporate governance matters.***" Specifically, on that date, the Company filed a Notification of Late Filing with the SEC, which stated as follows, in relevant part:

> XTI Aerospace, Inc. (the "Registrant") has determined that it is unable to file its Quarterly Report on Form 10-Q for the quarterly period ended June 30, 2026 (the "Form 10-Q") within the prescribed time period without unreasonable effort or expense because ***the Registrant is in the process of completing an internal review of the Registrant's former Chief Executive Officer, who resigned on August 17, 2026, and other related corporate governance matters.*** The review is being conducted entirely by a committee of "independent directors" (the "Committee") as defined by the Nasdaq Stock Market listing standards, as represented by independent counsel, and all parties are working diligently to complete the review, though a timeline has not yet been determined. ***The Registrant is in the process of evaluating the implications of the review on any disclosures, certifications, controls and governance matters,*** however the Registrant does not currently believe that the matters under review will affect any previously issued financial statements.

24. On this news, XTI Aerospace's stock fell $0.25 per share, or 15.9%, to close at $1.32 on August 18, 2026, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired XTI Aerospace securities between April 15, 2026 and August 17, 2026, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

26. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, XTI Aerospace's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of XTI Aerospace shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by XTI Aerospace or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

27. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

28. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

29. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of XTI Aerospace; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

30. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**UNDISCLOSED ADVERSE FACTS**

31. The market for XTI Aerospace's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, XTI Aerospace's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired XTI Aerospace's securities relying upon the integrity of the market price of the Company's securities and market information relating to XTI Aerospace, and have been damaged thereby.

32. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of XTI Aerospace's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about XTI Aerospace's business, operations, and prospects as alleged herein.

33. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the

Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about XTI Aerospace's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

**LOSS CAUSATION**

34. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

35. During the Class Period, Plaintiff and the Class purchased XTI Aerospace's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

**SCIENTER ALLEGATIONS**

36. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding XTI Aerospace, their control over,

and/or receipt and/or modification of XTI Aerospace's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning XTI Aerospace, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE

## (FRAUD-ON-THE-MARKET DOCTRINE)

37. The market for XTI Aerospace's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, XTI Aerospace's securities traded at artificially inflated prices during the Class Period. On April 16, 2026, the Company's share price closed at a Class Period high of $2.51 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of XTI Aerospace's securities and market information relating to XTI Aerospace, and have been damaged thereby.

38. During the Class Period, the artificial inflation of XTI Aerospace's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about XTI Aerospace's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of XTI Aerospace and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

39. At all relevant times, the market for XTI Aerospace's securities was an efficient market for the following reasons, among others:

(a) XTI Aerospace shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, XTI Aerospace filed periodic public reports with the SEC and/or the NASDAQ;

(c) XTI Aerospace regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) XTI Aerospace was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

40. As a result of the foregoing, the market for XTI Aerospace's securities promptly digested current information regarding XTI Aerospace from all publicly available sources and reflected such information in XTI Aerospace's share price. Under these circumstances, all purchasers of XTI Aerospace's securities during the Class Period suffered similar injury through their purchase of XTI Aerospace's securities at artificially inflated prices and a presumption of reliance applies.

41. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972),

because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

42. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of XTI Aerospace who knew that the statement was false when made.

**FIRST CLAIM**

**Violation of Section 10(b) of The Exchange Act and**

**Rule 10b-5 Promulgated Thereunder**

**Against All Defendants**

43. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

44. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase XTI Aerospace's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

45. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for XTI Aerospace's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

46. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about XTI Aerospace's financial well-being and prospects, as specified herein.

47. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of XTI Aerospace's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about XTI Aerospace and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

48. Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

49. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing XTI Aerospace's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

50. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of XTI Aerospace's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired XTI Aerospace's securities during the Class Period at artificially high prices and were damaged thereby.

51. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that

XTI Aerospace was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their XTI Aerospace securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

52. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

53. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**

**Violation of Section 20(a) of The Exchange Act**

**Against the Individual Defendants**

54. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

55. Individual Defendants acted as controlling persons of XTI Aerospace within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were

issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56. In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

57. As set forth above, XTI Aerospace and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 28, 2026

**GLANCY PRONGAY WOLKE & ROTTER LLP**

By: */s/ Rebecca Dawson*
Rebecca Dawson
745 5th Avenue, 5th Floor
New York, NY 10151
Telephone: (213) 521-8007
Facsimile: (212) 884-0988
rdawson@glancylaw.com

Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
rprongay@glancylaw.com
clinehan@glancylaw.com

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Telephone: (310) 914-5007

*Counsel for Plaintiff Eric Noalan*

# SWORN CERTIFICATION OF PLAINTIFF

## XTI AEROSPACE, INC. SECURITIES LITIGATION

I, Eric Noalan, certify that:

1. I have reviewed the Complaint, adopt its allegations, and authorize the filing of the Complaint on my behalf.

2. I did not purchase the XTI Aerospace, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this federal securities laws.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in XTI Aerospace, Inc. securities during the Class Period set forth in the Complaint are as follows:

   (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class in any action under the federal securities laws (15 U.S. Code, Chapter 2B; and 15 U.S. Code, Chapter 2A, Subchapter I) during the last three years.

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

8/26/2026

Date

Eric Noalan

**Eric Noalan's Transactions in XTI Aerospace, Inc. (XTI)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 5/7/2026 | Bought | 905 | $1.87 |
| 6/24/2026 | Sold | -30 | $1.66 |
| 7/21/2026 | Sold | -40 | $1.49 |